DeCamp v. Commissioner Berryhill Mr. Schultz. Good morning, Your Honor. May it please the Court. Berry Schultz on behalf of the appellant. Ms. DeCamp. The first issue I'd like to discuss this morning is that the ALJ failed to provide any explanation for finding that Ms. DeCamp would be off work 10% of the time but no more. I think that the discussion and the holding in the Lanigan v. Berryhill case by this Court is a very similar situation and fact. The ALJ in this case specifically said that when talking about the physical impairments that because of Ms. DeCamp's headaches, her pain, the side effects of her medication, which she testified caused her to be quite drowsy, and other physical symptoms, she would be off task 10% of the time. And then... So what's the ALJ supposed to do though? This is just an estimate and I just wonder what kind of evidence an ALJ should look to. You think it might have been more, for all I know maybe it would be less. What data points should the ALJ have tried to develop in the record? I think the ALJ should have and didn't make specific findings as to the limitations that the claimant's impairments actually caused. For instance, there's quite a bit of evidence of headaches, migraine-type headaches. There's two headache journals in the file which show how often she was having headaches during that period, 2011, and how severe the headaches were, how long they lasted. So taking the headache data, for example, saying if you're having, it was what, it was about three a week, three, four? No, the journal showed, one showed one and a half a week, the other averaged two and a half a week, between five hours and all day. So for even one a week, the journal though would show that for that day you were out? Yes. So that's more like 20% of the time. Yes, that's correct. The claimant testified that she would lie down due to her pain and her depression and because of the... She had photosensitivity and audiosensitivity. Well, for the migraine, she had photophobia and phonophobia, would lie down with an ice pack on her head in a dark room. Certainly that would take her off task, but also she testified that because of the depression she would lie down, because of the side effects of her medication she would lie down. How is that supposed to translate to a percentage? What is the ALJ supposed to specifically look at in saying, okay, the headaches and the pain translates into X percent? Well, the ALJ would have to make a finding because that's really the crux of the case as to how much time Ms. DeCamp would be off task. So the off task time you could just say, if the ALJ had credited, for example, a medical If the ALJ credited something like that, the ALJ would say, would an employer ask a vocational expert, would an employer tolerate that much time off task? Yes, that's correct. In this case, I think the key is that the ALJ actually found that the headaches and the pain and the side effects of the medication caused Ms. DeCamp to be off task. And since the ALJ made that finding... But didn't explain the finding, you're saying. That's correct. You would have pulled the 10% number and you wanted a paragraph or a sentence saying, and the reason I chose 10% is because this evidence. Yes, otherwise it's completely arbitrary, really, with no basis in the record at all. The ALJ, though, in coming up with the 10% did refer to the state agency's medical consultant, Dr. Goldstein's opinion about having difficulty working for extended periods of time and performing work within a schedule, and also referred to Drs. Lefevre and Dr. Pape's opinions about moderate restrictions. And why isn't that sufficient in coming up with or giving the evidence to support the 10%? Because none of those doctors were asked what percentage of time they believed the claimant would be off task, given her difficulties with concentration, persistence, or pace, or working within a schedule. So you think the substantial evidence would have to be based upon a doctor making that percentage? No, I don't. But since no doctor gave that percentage, the ALJ would have to have a reason tethered to the evidence, which supports the finding, especially when it's potentially the determinative finding in the case, where if the claimant's off task more than 10%, she's disabled. If she's off task less than 10%, or 10% or less, she can sustain work. Then there has to be a basis, otherwise it's an arbitrary finding. I think this court in the O'Connor-Spinner v. Colvin case, in the last paragraph of that suggesting that a moderate limitation in those areas could be 15% off task, in which case it would be worth preclusive. It's possible that the ALJ doesn't discuss this, but it's possible that making a finding of off task time wasn't really the necessary or the best finding here. Because the claimant testified that she had to lie down for various reasons, and the ALJ seemed to credit the side effects of her medications. Then the ALJ needed to make a specific finding as to, well, am I crediting her testimony that she lies down every day, at least once a day? I think the latter testimony in 2015 was multiple times a day. Is the ALJ crediting that testimony? And if so... She seemed to be, though, when she said that the medical records and the claimant's own activity doesn't reflect the frequency of the headaches and the pain, but that the ALJ considered the claimant's symptoms and medication side effects when coming up with this 10%. Why isn't that specific enough? Because it doesn't... Maybe she testified to having four migraines a week. Well, maybe the evidence doesn't support that. But the headache diaries that she submitted, which I submit is the best evidence, she kept those for five months, they show that she averaged either one and a half to two and a half a week. So while that maybe isn't the four per week that she testified to, while the evidence may not support the frequency that she testified to, what frequency does it support? The ALJ doesn't explain that, so again, there's no basis for her to have come up with the 10%. And is the key problem that this doesn't show up in the hypothetical for the vocational expert? Well, no, the ALJ includes the 10% off task in the hypothetical. But the point is the hypothetical was flawed in that it used the 10% number without adequate support. That's correct. Any other flaws in the hypothetical that you're pointing to? Well, we're arguing that the ALJ failed to properly consider the moderate limits in concentration, persistence, or pace, again, based on the rationale. The O'Connor spinner. The O'Connor spinner and progeny. Wasn't the vocational expert present when the plaintiff testified at the hearing, so she could have heard for herself what Ms. DeCamp was saying the limits were? She would have heard, but I believe that the plaintiff's counsel specifically asked the vocational expert if she considered anything other than what was in the ALJ's hypothetical questions, and the answer was no. Didn't she say that she had reviewed the E-file? And the E-file has no medical evidence. The F-file has the medical evidence. What's an E-file? The E-file has the work history evidence, the earnings records, and the D-file. So it's some reports filled out by the claimant, but mostly that's given to the vocational expert because it has vocational information. Is that in the record? Yes. Is the E-file in the record? Yes, it is. Do you have a record site? Because I couldn't find it. If not, you can look for it. I don't want to take up your time. Yeah, I actually don't have the record with me, but it is. And it's in, so there's the A, A, B, C, I don't know if there's a C, D, and then the E-file right there. But you said it's the F that has the medical. The F has the medical, and the vocational expert did not review that. I'd like to reserve a little time for rebuttal. All right, that's fine. Thank you. Ms. Schwartz. I feel like your whole office has been here this morning, Ms. Schwartz. Good morning. May it please the Court, my name is Allison Schwartz, and I represent the Commissioner of Social Security. I, too, am going to jump in and address the off-task limitation that Mr. Schultz had addressed. I would like to start by reminding the Court that, as set forth in our brief, the agency has amended the mental health regulations and have defined the term moderate. And moderate is defined as fair. And the agency has articulated in that amendment that that is how it contemplates the definition of moderate and has done so since 1985. But there's been some back and forth between you, right, about whether this is really just a restatement and clarification of what you've been doing all along versus something that ought to be prospective in application. Yes, and, you know, we're not asking that the Court apply this on a prospective basis. I understand that the old regulations apply. However, this new clarification is very helpful in that over the past decade or so... Why should we use it, though, if it's not prospective? I'm a little confused. Pardon me? Why are you arguing about it if we're not applying it? Because it's helpful in that the agency is explaining that this is how they have thought of moderate since 1985. But you're not saying there's a Chevron issue there? No, I'm not. All I'm trying to say is that the agency has not really done that great of a job explaining what moderate means over the years. And as a result, there has been some case law and some issues that have come up in the courts struggling with what the definition of moderate is. And there has been some suggestion in O'Connor-Spinner and its progeny that moderate could rise to the level of work preclusive. But it could. You know, it depends on what you're talking about. I mean, we've gotten so many cases where the agency seems to think, I'm looking at the RFC here, limitation to unskilled work, no fast-paced production line or tandem tasks, no changes. But if a person is limited in concentration, persistence, or pace, those kinds of things don't necessarily address the problem. You can find it hard to concentrate with respect to unskilled work or with respect to skilled work. You know, if you flit around in your mind from one thing to the next, you might not be good even at putting little things in a bag. Well, we have multiple medical opinions here that opine that Ms. DeCamp is moderately limited in concentration, persistence, or pace and could perform unskilled work. The ALJ's job... Where's the link? Because if she doesn't concentrate, if she doesn't stay on task, on page 14 of the ALJ's decision, she acknowledges the first full paragraph, this finding, which is her RFC, as well as the hypothetical to the VE. I will say she asserts that this finding will account for the difficulty maintaining attention. Yes, and then she explains, she said, this finding accounts for the moderate difficulties maintaining attention and concentration and the schedule-related difficulties. She says these specific limitations are accounted for in limiting the claimant to unskilled work with no fast-paced production line tasks, which would not require extended concentration and would make maintaining work pace more manageable. That's a very detailed articulation as to how someone with fair and adequate limitations could persist in the workplace. Well, I'm just not sure... I mean, it's clear she says this, but that's what we're reviewing, right? Does this make any sense? I hate this phrase, but anyway, has she built the logical bridge? Has she explained why unskilled work is work that doesn't require concentration? I can think of unskilled work that might require a lot of concentration. You know, just, again, you know, putting nails in a little bag for an IKEA, you know, put-it-together piece of furniture. That's extremely unskilled. You take the nail, you put it in the bag, but you'd have to stay on task. You'd have to concentrate and do what you're supposed to be doing. Well, the definition of unskilled work under the regulations is work which means little or no judgment to do simple duties. Precisely. Little or no judgment, which doesn't tell you about concentration and staying on task. Judgment means can you decide I should do A or should I do B? You know, does this need a modification? Judgment isn't concentration. Well, my response to that would be turning back to the fact that, again, Ms. DeCamp does not have marked limitations in maintaining concentration. She had moderate limitations in maintaining concentration. And as this court has defined in DeCamp, excuse me, in Capman, a moderate limitation is not a complete impairment. A moderate limitation, again, as I've pointed out, is something that's fair. In the past, I believe it's been defined as adequate. It isn't work-preclusive, and it certainly isn't in this case. And turning back to the off-task limitation, which I think could shed some light here, I believe the district court got it right when he said, Judge Griesbach, a 10% off-task limitation is not something that is going to be arrived at with mathematical certainty. I don't... But here's the problem. You know, this is the Potter Stewart, I know it when I see it. And yet, if a 10% off-task means that she loses her case, she's got enough capability that employers will tolerate, you know, a half a day out of a work week, that's one thing. It's quite another thing if 12% means that she's unemployable. Or, you know, 15 was the number we were given. But this is a very sensitive point, and just sort of flipping a coin inside your head and saying, feels like 10% to me, untethered to the evidence in the record is very troublesome. Well, I take issue with the statement that it's untethered to the evidence in the record. But she doesn't... And just to give you some examples... Like the headache journal. She doesn't go through that. Okay, here... She doesn't go through other things. With regard to the headache journal, that evidence is from before Ms. DeCamp started treating her headaches. In April 2012, Ms. DeCamp started taking Imitrex, which is also referred to as Frova, to treat her headaches. And after that, she never complained about headaches again. And I would just point out to you  Ms. DeCamp said that she had multiple headaches, multiple headaches a week, needed to lie down, had disabling mental health symptoms. But if you look at the record, her most recent exam, which was just a few months earlier, still under the period under consideration, she said, I don't have any headaches. Did she actually say that? Yes. Or did she not complain about headaches? She denies headaches. She denied headaches. She denied anxiety. Do you have a citation for that? Absolutely. If you turn to page 998 of the record, review of symptoms, musculoskeletal, no myalgias, no joint aches and pains, no swelling or back pain, neurologic, no headaches, no blurred vision, lightheadedness, dizziness, no numbness or tingling. If you look under psychiatric, no mood swings or depression, no anxiety or sleep problems. And then on page 999, the treating physician's assistant provides a full examination record of her. Normal range of motion of joints, but normal musculoskeletal exam. And then she had a depression screen where she didn't even test positive for depression. She was subclinical. So if you look at those statements that she made at her hearing and compare it to the most recent exam, the ALJ was reasonable to not read her symptoms. It's not her statements, but it's what the doctor said that she indicated. Well, this is the doctor's recollection, or the doctor's recording of her statements. Which sometimes we're told we should not listen to because it's just her. Well, if she's saying that she has no headaches, I think that that's very telling. When a few months later she's telling the ALJ she has four headaches a week. He says his report disclosed to him that she had no headaches, but nevertheless. Well, I mean, the ALJ's duty is to review the medical record. And if you're reviewing the medical record in conjunction with those statements about her symptoms, the ALJ was very reasonable to not fully believe her symptoms. But if you look at the RFC, the 10% off task shows, look, I don't fully believe you based on what I see in the medical record, but I know you have this history of headaches. I know you've had some problems with your mental health. I'm going to put in a little wiggle room and credit you, but you only have moderate limitations and the other limitations are not supported by the record. Do you agree that the E-file does not contain the medical record? As far as I'm concerned, what the E-file does contain is evidence regarding Ms. DeCamp's own functions. She fills out function reports where she describes her symptoms and she describes her limitations. You're being a little evasive. Does it have the doctor's notes? I'm sorry, that's correct. No, it doesn't. The medical records are in the F-file. Okay, thank you. Thank you very much. Thank you. Anything further, Mr. Schultz? We cite in our brief the Federal Register of that change in the moderate. We point out that in the comment, the commissioner notes that a moderate limitation can range from mild to mark, so there has to be an individual assessment. It's not just that fair, and therefore it means the claimant can work. The 2014 December treatment note that seemed to show the claimant wasn't having problems at that point, that is five years after her alleged onset date, so even if the ALJ could rely on that note to show I don't find she has symptoms as of that date, there is a lot of evidence of clear symptoms prior to that. And finally, at page 593, that's the state agency doctor's case, the psychologist's opinion. The doctor says that she's capable of withstanding the demands of unskilled work, but then, and there's a period, and then says moderate limits in concentration, persistence or pace, and social functioning, so there are additional limitations to her ability to perform that unskilled work. Thank you, Your Honor. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement. Thank you.